**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martinez**

Civil Action No. 12-cv-1783-WJM

RUBEN JESSIE HERNANDEZ,

    Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE LAW JUDGE**

This matter is before the Court on review of the Commissioner's decision which denied Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not

substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## II. BACKGROUND

Plaintiff Ruben Jessie Hernandez ("Plaintiff") was born on May 13, 1960 and was 46 years old on the alleged disability onset date. (Admin. Record ("R.") at 10, 188.) Plaintiff is a high school graduate with prior work experience as an industrial truck operator, landscape laborer, janitor, and construction laborer. (R. 20.)

Plaintiff filed an application for supplemental security income on June 20, 2007. (R. 186.) Plaintiff's claim was denied and, upon his request for a hearing, his claims were heard by Administrative Law Judge ("ALJ") E. William Shaffer on February 4, 2009. (R. 70.) The ALJ found that Plaintiff was not disabled and denied his claim. (R. 70-79.) The Appeals Council remanded the case to the ALJ for re-hearing. (R. 80-82.) ALJ Shaffer held a second hearing on June 30, 2010. (R. 10.)

On September 22, 2010, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] At step one, the ALJ

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See*

found that Plaintiff had not engaged in substantial gainful activity since November 30, 2006, the alleged onset date. (R. 13.) At step two, he found that Plaintiff suffered from the following severe impairments: multilevel spondylosis lumbar spine, systolic heart murmur with dyspnea on exertion and tachycardia, osteoarthritis bilateral shoulders and knees, and hearing loss. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments or combination of impairments listed in the social security regulations. (R. 15*.*)

With respect to the Plaintiff's residual functional capacity ("RFC"), the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), and in postulating this residual functional capacity the undersigned in relying in part on exhibit 3F, and more specifically the opinion therein, where it was felt that the claimant could life or carry 40 pounds less than 1 hour a day and 20 pounds up to 2 hours a day, thereby interpolating those restrictions to fall within the light exertional level. Standing/walking would be limited to 2 to 4 hours out of an 8-hour workday and sitting would be limited to at least 6 hours of out an 8-hour workday, subject to frequent postural shifting or changes. Use of the lower extremities for pushing/pulling would be limited to the exertional level and use of the upper extremities for pushing/pulling would also be limited to the exertional level, but only on an occasional basis. There would be no climbing ladders, ropes or scaffolds, and no crawling, with occasional use of stairs and ramps, as well as occasional balancing, stooping, kneeling and crouching. The claimant should avoid concentrated exposure to extreme temperatures such that the exertion would be the result of heavy exertion or marked exertion as characterized in exhibit

---

20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> 3F, and he should also avoid concentrated exposure to noise. The work would have to be unskilled, and although the report at 3F identifies an indication of cognitive dysfunction and a history of a learning disorder, the undersigned concludes that because the condition has remained untreated as far as any secondary psychiatric condition and the information examination at 6F concluded or opined that a learning disorder is only "suspected", the fact that the claimant's activities of daily living since his graduation from high school, including his past work experience as a forklift operator which is a semi-skilled position and other work at the semi-skilled level, and without any additional corroboration, the undersigned concludes that the implications of any learning disorder in terms of work capacity would be mild at best, and is accommodated with the unskilled parameter in this residual functional capacity.

(R. 16.)

Based on this RFC, at step four, the ALJ found that Plaintiff could not return to his prior work. (R. 20.) The ALJ found that transferability was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled', whether or not the claimant has transferable job skills." (R. 21.) At step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (*Id*.) Specifically, the ALJ found that Plaintiff could work as an order clerk for food and beverage, a call out operator, a document preparer for microfilm, and an office helper. (*Id*.)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (R. 22.) The Appeals Council denied Plaintiff's request for review. (R. 1.) Plaintiff then filed this action seeking review of the Commissioner's decision. (ECF No. 1.)

### III.  ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) failing to properly weigh medical evidence; and (2) failing to apply the grids.  The Court will address each of these arguments in turn below.

### A.    Consideration of Medical Evidence

Plaintiff contends that the ALJ did not properly consider the medical evidence from two providers: (1) Dr. José Vega, a consulting psychologist; and (2) Dr. Vui Mai, his treating physician.  "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  In determining what weight to give any medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d) and § 416.927(d).  *See id.*  Those sections of Title 20 of the Code of Federal Regulations provide, in relevant part:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. . . .
>
> (3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.  Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions

>consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
>(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
>(5) Specialization. . . .
>
>(6) Other factors.  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.  For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416.927(d); *see also* 20 C.F.R. § 404.1527(d).  "After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion."  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks and brackets omitted).

    1.    <u>Dr. Vega—Examining Psychologist</u>

Plaintiff argues that the ALJ "improperly picked and chose restrictions from Dr. Vega's report, ignoring, without explanation, restrictions that support plaintiff's claim." (ECF No. 15 at 22.)  Specifically, Plaintiff points to Dr. Vega's opinions that Plaintiff had "moderate-to-marked" and "marked-to-extreme" limitations in all areas of mental functioning, which the ALJ did not account for in his RFC.  (*Id*. at 21.)

At step two, the ALJ found that Plaintiff's mental functioning and mental health was not a severe limitation.  (R. 14.)  In making this finding, the ALJ reviewed Dr. Vega's opinions but assigned them "little weight".  (*Id.*)

6

As explanation for his assignment of "little weight" to Dr. Vega's opinions, the ALJ noted that Dr. Vega was not a treating physician; rather, he was "a paid consultant hired only to provide the mental residual functional exam." (*Id.*)  The ALJ pointed out that Dr. Vega was not provided with any of Plaintiff's medical records but still opined, based on a one-time exam conducted in November 2009, that Plaintiff had suffered severe mental health impairments since 2006. (*Id.*)  The ALJ found that the severity of the restrictions assessed by Dr. Vega were not consistent with Plaintiff's prior work history or Plaintiff's own testimony. (*Id.*)  While the ALJ did not find that Plaintiff's mental processing or mental health was a severe impairment, he found that Plaintiff was only capable of performing unskilled work, which he stated "adequately accommodates the claimant's mental health limitations. (*Id.*)

The Court finds that there is substantial evidence in the record supporting the ALJ's findings regarding Dr. Vega's opinions and that the ALJ applied the correct legal standards.  The ALJ specifically addressed at least three of the six factors set forth in the regulations: examining relationship, supportability, and consistency.  He is not required to do more.  Additionally, there is sufficient evidence showing that Dr. Vega's opinions are not consistent with the medical records and Plaintiff's own testimony.  Dr. Vega found that Plaintiff had "marked-to-extreme" limitations in his ability to follow instructions, maintain attention, perform activities within a schedule, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and sustain an ordinary routine without special supervision. (R. 327-28.)  However, Plaintiff's prior employment record shows that he worked successfully and consistently for years in trades that require many of these

skills. (R. 228.) Plaintiff testified that he had never sought mental health treatment and never taken any medication for a mental health ailment. (R. 53.) Medical notes from other physicians show that Plaintiff was generally in good spirits during their visits. (R. 344.) Thus, the ALJ's finding that Dr. Vega's opinions are inconsistent with the other evidence in the record is well supported.

Plaintiff attempts to analogize this case to *Chapo v. Astrue*,[2] 682 F.3d 1285 (10th Cir. 2012) in which the Tenth Circuit held that the ALJ had erred by not adopting the medical opinion's "unopposed findings". In *Chapo*, the only explanation given by the ALJ for assigning "little weight" to the medical opinion was that the physician and the claimant had only been treating together for two months. *Id*. at 1291. The Tenth Circuit held that this fact alone was not sufficient to "effectively reject" unopposed medical opinions. *Id*.

The Court finds that *Chapo* is not persuasive here because, as set forth above, the ALJ in this case offered far more reasoned bases for assigning little weight to Dr. Vega's opinions. The ALJ specifically discussed a number of the factors set forth in the regulations and provided a relatively detailed analysis as to why he was affording Dr. Vega's opinion only little weight. Given this discussion, and the substantial evidence supporting the ALJ's findings with regard to Dr. Vega's opinions, the Court finds that the manner in which the ALJ weighed Dr. Vega's medical opinions was not error.

---

[2] Notably, *Chapo* also involved Dr. Vega and Plaintiff's counsel, Michael Seckar.

2. <u>Dr. Mai—Treating Physician</u>

Plaintiff also challenges the manner in which the ALJ weighed the opinion of Dr. Mai, Plaintiff's treating physician. (ECF No. 15 at 22.) The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). An ALJ, however, may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, the opinion deserves, considering certain factors identified in the regulations. *See Watkins*, 350 F.3d at 1300-01. Treating physician opinions are still entitled to deference and the ALJ must give good reasons in his or her decision for the weight he or she ultimately assigns those opinions. *Id*. "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id*. at 1301.

Plaintiff argues that the ALJ erred by not crediting Dr. Mai's opinion with regard to Plaintiff's restriction level and by generally crediting the opinions of Dr. Campbell, an examining physician, over Dr. Mai's opinions. (ECF No. 15 at 23.) The ALJ found Dr. Campbell's opinions "persuasive", afforded them "great weight", and essentially adopted Dr. Campbell's restrictions as the RFC in this case. (R. 18.) On the other hand, the ALJ gave Dr. Mai's opinions only "some weight". (R. 17.)

For the most part, Dr. Campbell's opinions were consistent with Dr. Mai's opinions. (*Compare* R. 283-85 *with* R. 355-57.) The main distinction is that Dr. Mai opined that Plaintiff's "reaching" should be restricted to "rare", meaning less than ten repetitions each day (R. 357), while Dr. Campbell opined that Plaintiff's overhead reaching should be limited to less than two hours per day (R. 285). The ALJ's RFC ultimately concluded that Plaintiff's overhead reaching should be limited to "occasionally", which means less than one-third of the time. (R. 16.)

The Court finds that the ALJ did not err in choosing to give greater weight to Dr. Campbell's opinion than Dr. Mai, despite the fact that Dr. Mai was Plaintiff's treating physician. The ALJ noted that Dr. Mai's assessment was completed in January 2009, at which time Dr. Mai's preliminary diagnosis was that Plaintiff suffered from carpal tunnel syndrome. (R. 13.) Tests performed in December 2009 were negative for any kind of nerve impingement and there was no indication of carpal tunnel syndrome. (*Id*.) Because Dr. Mai's diagnosis was not supported by the objective evidence, the ALJ was not required to give his opinions controlling weight.

Additionally, Dr. Mai's opinions on the assessment form were not internally consistent. In response to the question "[d]oes the patient's condition restrict his ability

to use his/her upper extremities", Dr. Mai responded that he was "unable to evaluate - most likely 2nd to carpal tunnel". (R. 357.) The assessment form then directed the physican to complete a series of check boxes if he had answered "yes" to the prior question. (*Id*.) Despite the fact that Dr. Mai had not answer "yes" and had, in fact, indicated that he was unable to make an evaluation, Dr. Mai checked the "rare" box for how frequently Plaintiff could reach. (*Id*.) In this context, the Court has little trouble concluding that the ALJ did not err in failing to credit Dr. Mai's assessment that Plaintiff's limitation on reaching should be rarely.

With regard to why the ALJ only gave "some weight" to Dr. Mai's opinions overall, the ALJ noted that, at the time Dr. Mai completed the physical residual functional capacity form, he had just started treating Plaintiff. (R. 17.) The ALJ also stated that Dr. Mai's assessment did not provide many specific limitations and that Dr. Mai deferred to Dr. Campbell's assessment with respect to a number of areas. (*Id*.) The evidence in the record supports these findings. Specifically, in response to the question about the "maximum amount the patient can lift for up to one-third of an eight hour workday", Dr. Mai stated that he was "not qualified to make this assessment". Dr. Mai then specifically referred to and incorporated the restrictions assessed by Dr. Campbell. (R. 355.) Dr. Mai similarly answered questions regarding the maximum amount of weight Plaintiff could carry and the number of hours which Plaintiff could sit. For both of these questions, Dr. Mai simply referred to and incorporated Dr. Campbell's assessments. (*Id*.) Given this context, it would have been nonsensical for the ALJ to have afforded greater weight to the limitations assessed by Dr. Mai than those assessed by Dr. Campbell.

Overall, the ALJ provided a sufficient basis for failing to give controlling weight to Plaintiff's treating physician. The ALJ explained the weight he assigned to Dr. Mai's opinions and the reason for assigning such weight. In doing so, the ALJ applied the correct legal standard and his findings in this regard are supported by substantial evidence. Accordingly, the Court finds that the ALJ's weighing of Dr. Mai's opinions was not error.

**B.      Use of Grids**

The final argument made by Plaintiff in this case is that the ALJ's RFC erroneously found Plaintiff to be capable of "light work" when the restrictions imposed did not meet that definition. (ECF No. 15 at 29.) Plaintiff argues that the ALJ's finding that he was capable of "light work" was error because it affected the ALJ's analysis at step five. (ECF No. 15 at 31-32.) Specifically, Plaintiff contends that, had the ALJ found that Plaintiff was only capable of doing "sedentary work", he should have found Plaintiff disabled based on the grids. (*Id.*)

At step five, the Commissioner bears the burden of showing that significant work exists in the national economy which Plaintiff could perform. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). One of the ways that the Commissioner can meet this burden is through use of the grids. *Id*. "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (internal quotation omitted). Therefore, in some circumstances, the grids can be a shortcut to determining whether a claimant can perform other work

by eliminating the need for testimony from a vocational expert.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992).

It is well established that the Commissioner cannot rely on the grids "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984); *see also Heckler v. Campbell*, 461 U.S. 458, 468 (1983) (holding that there must be an "exact fit" between a claimant's limitations and the criteria of the grid).  Where the grid rules do not direct a particular finding, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor."  20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

Plaintiff contends that the ALJ should have utilized Grid 201.14, which applies if: (1) the claimant is limited to sedentary work; (2) is of "advanced age"; (3) has a high school education or more but such does not provide for direct entry into skilled work; and (4) has previous work experience with skilled or semi-skilled jobs but those skills are not transferable.  *See* Grid Rule 201.14, 20 C.F.R. § 404, Subpt. P, App. 2 § 201.14.  The only element of this Grid in dispute here is whether Plaintiff was limited to sedentary work.

The regulations define sedentary and light work as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

> carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

The limitations in the ALJ's RFC fall between light work and sedentary work. For example, the RFC provides that Plaintiff can lift or carry 40 pounds for less than one hour per day and 20 pounds up to 2 hours per day, which are consistent with the finding that Plaintiff could perform "light work". *See* 20 C.F.R. § 404.1567. However, the RFC also states that standing/walking should be limited to 2 to 4 hours a day and that sitting should be at least 6 hours, which is more consistent with sedentary work. *See* 20 C.F.R. § 404.1567; SSR 83-14 (noting that, at the unskilled level, "[t]he major difference between sedentary and light work is that most light jobs . . . require a person to be standing or walking most of the workday.").

In *Koopman v. Apfel*, the claimant's RFC similarly fell between the definitions of "light work" and "sedentary work" because the claimant could perform the lifting requirements of light work but could not stand as much as the definition of light work required. 162 F.3d 1173 (Table), 1998 WL 747124 (10th Cir. Oct. 20, 1998). The

Tenth Circuit held that the "claimant's RFC was less than the full range of light work, but that does not mean that it is presumed to be limited to sedentary work. *Id*. at *2. Because the claimant's RFC fell between the two levels, the ALJ's refusal to rely on the grids applicable to sedentary work was not error. *Id*. Rather, the Tenth Circuit held that the ALJ "did exactly what he should have done—he turned to a vocational expert." *Id*.

The same is true here. The ALJ's RFC fell between the definitions of "light work" and "sedentary work" in the regulations. As such, there was not an "exact fit" between the RFC and Grid 201.14 and it was not error for the ALJ to decline to apply the Grid at step five. Rather, the ALJ appropriately sought input from a vocational expert and made his step five finding on the basis of the vocational expert's testimony. Accordingly, the Court finds that Plaintiff has failed to show that the ALJ's step five analysis was error.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's denial of benefits is AFFIRMED.

Dated this 27th day of June, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge